## Stoddard's Estate

*C. William Freed* and *Daniel L. McCarthy*, for petitioner.
*Newton R. Turner*, for respondent.

STEWART, P. J., February 12, 1934.—This was a citation to show cause why an account should not be filed. The petition set forth that the petitioner was a daughter of Mabel Oxford, who died April 2, 1899, intestate, leaving the petitioner as her only heir at law; and that petitioner's mother was a daughter of David Stoddard, who died July 4, 1924, having first made his will, dated January 8, 1903, which after his death was duly probated.

An answer was filed admitting all the above facts, but it alleged as a matter

of law that the petitioner had no interest under the will of her grandfather, David Stoddard. Testimony was taken in which it was attempted to show by a number of witnesses that David Stoddard, in his lifetime, had declared that he wished the petitioner to have her mother's share under his will. Objection was made to this testimony for various reasons. The law is very plain that this testimony cannot be considered. In Comfort v. Mather, 2 W. & S. 450, the syllabus is: "A legacy lapses where the legatee, not being a lineal descendant of the testator, dies in his lifetime, notwithstanding the testator knew of his death and intended his children should have the benefit of the legacy."

At page 453, Mr. Justice Sergeant said: "The legal construction of a will in writing cannot be explained or altered by the parol declarations of the testator, of his understanding of the meaning of the will, or of his intentions to do something else. It is not a case of ambiguity, or mistake of the name of the legatee, or of circumstances such as the law allows to be controlled by parol evidence. The testatrix knew that the legatee was dead, and yet chose to leave the will as it was, to its legal interpretation and consequences, without adopting the measures necessary to effectuate her alleged intentions."

In Myers v. Myers, 16 Pa. Superior Ct. 511, the syllabus is: "Where it is uncertain what land is included in a devise, oral evidence is admissible to identify the subject-matter of the devise.

"The intention of a testator is to be determined from the words written in his will. If his wishes with regard to the disposition of his property, as thus expressed, can be applied to the existing conditions of that property, the result must be accepted. It is not competent to show by declarations of the testator made at the execution of his will or subsequently, that he intended a devise to include something that is excluded by the terms of the will as executed."

Other authorities might be cited, but it is unnecessary.

The important question is not as plain as at first blush it seemed to be. It would seem that, in the multitude of cases to be found in the books, many cases might be cited which would be on all fours with the present case, but we have not found one decided by the higher courts that we feel absolutely and certainly rules this case. The will of the testator is a very short one. In the first clause he orders his debts to be paid. In the second clause he devises as follows:

"I give, devise, and bequeath all the rest, residue, and remainder of my estate, whether the same consists of real or personal property or wheresoever situate, to my son George Stoddard in trust, for the following purposes:

"First, to pay to my beloved wife, Elizabeth A. Stoddard, one-third of the income of my estate for her support and maintenance during her natural life, if she so long remains my widow, and if she should marry again, then she is to receive the sum of two thousand dollars as her share in my estate, to be paid to her at the time of my youngest child becomes twenty-one years of age, and the remainder of the income of my estate to be used in supporting, maintaining, and educating my minor children until they attain the age of twenty-one years and the estate to be divided between my said children share and share alike. I give and grant unto my said Trustee and Executor full power and authority in and about my said estate, he to sell and dispose of any or all of my property, excepting the homestead, that to remain a home for my wife so long as she remains my widow, and my children, until they become of age, with power to make good and lawful deeds and conveyances and transfers in law and to invest the money belonging to my estate as he shall deem best to the interests of estate."

It must be borne in mind that petitioner's mother died 4 years before the testator drew his will. When he drew that will, she was not a "child" but a

"deceased child". The petitioner, if she is entitled to anything, can claim only because she was within the class which the testator had in mind when he drew his will. It is true that under section 9 of the Wills Act of 1917, it is provided: "Every will shall be construed, with reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will." Nevertheless, in getting at the testator's meaning, we must consider the fact that petitioner's mother was dead at the time the will was drawn. There is in this will no reference to the heirs of children or to the issue of children, and no remainder over to anyone on the death of any of the children. It is simply given to his children, "the estate to be divided between my said children share and share alike". That is all he says.

It is very plain under the authorities that "children" does not ordinarily comprehend "grandchildren". In Steinmetz's Estate, 194 Pa. 611, President Judge Swartz said: "Under a bequest to children, grandchildren and other remote issue are excluded unless it be the apparent intention of the testator, declared by his will, to provide for the children of a deceased child. But such construction can only arise from a clear intention or necessary implication, as where there are not other children than grandchildren or when the term 'children' is further explained by a limitation over in default of issue. The word 'children' does not ordinarily, and properly speaking, comprehend grandchildren, or issue generally. Their being included in that term is only permitted in two cases, viz.: from utter necessity, which occurs when the will would remain inoperative unless the sense of the word 'children' were extended beyond its natural import, and where the testator has clearly shown by other words that he did not intend to use the term 'children' in the proper actual meaning, but in a more extended sense: Hunt's Estate, 133 Pa. 260; Barnitz's Appeal, 5 Pa. 264; Horwitz v. Norris, 49 Pa. 213; Castner's Appeal, 88 Pa. 478."

Mr. Justice Green, in a very elaborate opinion in Hunt's Estate, 133 Pa. 260, reviewed the authorities very exhaustively. It is, however, contended that section 15 of the Wills Act of 1917, which is as follows: "No devise or legacy in favor of a child or children, or other lineal descendant or descendants of any testator, whether such children or descendants be designated by name or as a class, shall lapse or become void by reason of the decease of such legatee or devisee in the lifetime of the testator, if such devisee or legatee shall leave issue surviving the testator; but such devise or legacy shall be good and available in favor of such surviving issue, with like effect as if such devisee or legatee had survived the testator, unless the testator shall in the will direct otherwise": changes the effect of above decisions. That section is practically section 12 of the Act of April 8, 1833, P. L. 249, 250, which was passed on in Bradley's Estate, 166 Pa. 300, the syllabus of which is: "Where a bequest is to 'all' the grandchildren of testator, share and share alike, after a provision for a life estate, the grandchildren take a vested estate from the time of the death of the testator, subject to be opened to let in after-born grandchildren.

"Where in such a case one of the grandchildren dies in testator's lifetime leaving a child, such child is entitled to the parent's share under the Act of April 8, 1833, P. L. [249] 250."

Judge Ferguson, in a very elaborate opinion, discussed Gross' Estate, 10 Pa. 360, and Guenther's Appeal, 4 W. N. C. 41, and distinguished them, and in concluding, said: " 'The case as presented to us does not appear to have ever been passed upon by the Supreme Court. It was fully considered by Judge Gibson, of York county, in Shetter's Est., 2 Dist. R. 284, and in an able opinion he concludes that the doctrine laid down in Gross's Estate and Guenther's Appeal has

no application in a devise or bequest "in favor of a child or other lineal descend-ant," a conclusion which ought to receive general approval.' "

It does not appear in that case when the grandchild died, but Judge Porter, in distinguishing the case in Harrison's Estate, 18 Pa. Superior Ct. 588, 595, said: "In Bradley's Estate, 166 Pa. 300, it was held that where a member of the class dies after the date of the will leaving issue, such issue took by substitution; . . ." That shows that he must have investigated, and found the fact to be that the death was after the date of the will. The instant case, therefore, is not ruled by Bradley's Estate. Harrison's Estate was first reported in 10 Dist. R. 45. Judge Hanna delivered the opinion. The syllabus of the case is: "A gift to a class, the members of which are not individuated, is simply and necessarily a gift to the persons then in existence who form the class. It cannot by any process of reasoning be made to include persons who had ceased to exist when the class was defined.

"The Act of July 12, 1897, P. L. 256, is confined in its operation to cases of death of a member of the class to whom the gift is made after the date of the will in the lifetime of the testator."

Judge Porter's opinion was affirmed by the Supreme Court in 202 Pa. 331, and is given in full there. The syllabus is: "The effect of the act of 1897 is to provide that where one is within a class designated by the testator as the object of its bounty the devise or legacy to him shall not lapse by his' death during the lifetime of the testator, but the person so dying must have been a member of the class at some time in the period during which the will remained ambulatory, between the execution of the will and the death of the testator.

"The act was not intended to set up a new rule for the construction of wills and include as primary legatees, persons who did not come within the meaning of the language employed by a testator; its purpose was to provide for the substitution of the issue upon the death of one who was at the date of the will, or subsequently came, within the class to which the devise or bequest was made."

See also the leading cases of Gross's Estate, 10 Pa. 360, and Todd's Estate, 33 Pa. Superior Ct. 117. The syllabus of the latter case is: "The Act of July 12, 1897, P. L. 256, provided that where one is a member of a class named by the testator as objects of his benevolence, the legacy or devise shall not become void because of his death in the lifetime of the testator, but shall be good in favor of surviving issue of the dead legatee. The act does not apply, however, unless such deceased legatee was a member of a class at some time between the execution of the will and the death of the testator."

To the same effect see the opinions of Solly, P. J., in Harley's Estate, 21 Montg. 97, Smith, P. J., in Greiner's Estate, 37 Lanc. 305, Solly, P. J., in Fosbenner's Estate, 26 Pa. C. C. 56, Schaeffer, P. J., in Fetherolf's Estate (No. 2), 12 Berks 62; and Frazer, P. J. (now Chief Justice of the State), in Allen et ux. v. Brown et al., 47 Pitts. 409. It is true that in the consideration of these cases, the courts had before them the Act of July 12, 1897, P. L. 256, which did not apply to lineal descendants, but the Act of April 8, 1833, P. L. 249, which was repealed and reënacted by section 15 of the Wills Act of 1917, is similar to the Act of 1897, and the cases cited must apply to it.

As the petitioner's mother died in the lifetime of the testator, before the date of the will, and as nothing ever vested in her, her child, the petitioner, cannot claim. Petitioner's mother was not alive either at the time of the date of the will or at the time of testator's death.

And now, February 12, 1934, the petition is dismissed at petitioner's cost.

From Henry D. Maxwell, Easton, Pa.