From Musser W. Gettig, Bellefonte.

## Buseck's Estate

*Marsh & Eaton* and *J. D. Held*, for claimants.
*Bryan & Evans*, contra.

WAITE, P. J., July 2, 1935.—Julius E. V. Buseck died on February 9, 1932, leaving surviving him neither wife nor issue. His last will and testament, dated January 26, 1929, was duly probated on February 13, 1932. The estate has been fully administered and there is now in the hands of the executors the sum of $35,972.36 for distribution under the residuary clause of his will. The names of the admitted residuary legatees, nephews and nieces of testator and his deceased wife, are set forth in the petition sur audit. Four other persons not included in the said list of legatees claim distributive shares in this estate under the residuary clause of the will, namely: Lenora Weber and William Weber, minor children of Marian Liebau Weber who died intestate July 1, 1924, and who was the daughter of John Liebau (who also died prior to the making of the will), a nephew of Emma C. V. Buseck, wife of the testator; Mabel K. Carlton, an adult daughter of Charles E. Knobloch who died in 1926 and was a nephew of Julius E. V. Buseck, the testator; and Amos C. Nielsen, adult son of Mary Ann Nielsen, who died in 1915 and was a niece of said testator. It is to be noted that the nephews and nieces of testator and his wife through whom all of the four above-named persons claim were dead at the date of the making of the will. The residuary clause of testator's will is as follows:

"All the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever kind or nature and whatsoever situate, I give, devise and bequeath to my nephews and nieces of my blood, however including Erma v. Buseck, adopted daughter of my brother, William T. v. Buseck and to the nephews and nieces of my deceased wife, Emma C. v. Buseck, of her blood, equally, share and share alike."

Under this clause there can be no question but that the nephews and nieces of both testator and his wife who were living at the date of decedent's death are entitled to a share in his estate. Nor can there be any doubt under the provisions of section 15 (*b*) of the Wills Act of June 7,

1917, P. L. 403 (which is in substance a reënactment of the Act of July 12, 1897, P. L. 256), that the children of deceased nephews and nieces of testator himself who were living at the date of the execution of the will are entitled to share in the distribution of the residuary estate. The pertinent parts of both section 15(b) of the Wills Act and of the Act of July 12, 1897, P. L. 256, relating to this matter are identical and as follows:

". . . no devise or legacy made in favor of a brother or sister, or of brothers or sisters, of such testator, or in favor of the children of a brother or sister of such testator, whether such brothers or sisters, or children of brothers or sisters, be designated by name or as a class, shall be deemed or held to lapse or become void by reason of the decease of such devisee or legatee in the lifetime of the testator, if such devisee or legatee shall leave issue surviving the testator; but such devise or legacy shall be good and available in favor of such surviving issue, with like effect as if such devisee or legatee had survived the testator".

By a careful reading of the plain language of these acts alone, it would seem to make no difference whether or not the brothers or sisters to whom or to whose children a bequest is made were living at the date of the making of the will, but in view of what was said by Judge Porter in Harrison's Estate, 18 Pa. Superior Ct. 588, affirmed per curiam in 202 Pa. 331, a different conclusion must be reached as to the surviving children of nephews and nieces of a testator who had died prior to the execution of his will, in other words, prior to the time that his will came into existence or became ambulatory.

There is no appellate court decision covering this feature of the Wills Act of 1917, and in the absence of such decision we are bound by the court's ruling in Harrison's Estate, supra, on the identical words contained in the Act of 1897, which case carefully reviews the statutes and decisions of the Supreme Court thereon prior to that date. In that case Judge Porter says:

"Whether the person within the class designated by the act, who has died during the lifetime of the testator, was a legatee or devisee within the intention of the testator, must first be ascertained from the language which he used in disposing of his property. When the devise is to a person by name, it is conclusive as to the intention of the testator that that person should take, and the intention of the testator being established, the subject of the devise or bequest will, upon the death of the testator, be good and available in favor of the issue when the primary devisee or legatee has died during the lifetime of the testator. This is the effect of legislation of this character, even in a case when the primary devisee was dead at the time the testator specifically designated him as the object of his bounty: Minter's Appeal, 40 Pa. 111; Winter v. Winter, 5 Hare, 306.

"The legislation in question was no doubt enacted for the purpose of changing the law, as it had been determined in Gross's Estate, 10 Pa. 360, and kindred cases, that in case of a devise to children of brothers and sisters as a class, only those children who were in existence at the death of the testator were entitled, to the exclusion of the representatives of children dying before the testator, but after the date of the will. A bequest to a number of persons not named, but answering a general description, is a gift to them as a class; this rule of construction is intended to settle the testator's intention unless the will itself shows that he intended otherwise: Denlinger's Estate, 170 Pa. 104. Prior to the act of 1897 the persons who constituted the class described by the testator would have been ascertained as of the time when the legacy vested; and it is only in case of a devise or bequest to a class that that legislation has worked any change in the law, for devisees and legatees nominatim, standing in the same degrees of relationship, were protected by the Act of May 6, 1844, P. L. 565. The effect of the act of 1897 is to provide that where one is within a class designated by the testator as the objects of his bounty, the de-

vise or legacy to him shall not lapse by his death during the lifetime of the testator, but the person so dying must have been a member of the class at some time in the period during which the will remained ambulatory, between the execution of the will and the death of the testator. The testator may by apt words designate the time at which the constituents of a class are to be determined. If he fix upon a time antecedent to the date of his will, then all who had died before that date and all who were born afterwards would be excluded from participation. If he fix upon a definite date subsequent to the execution of the will then only those in existence when that day arrived could take. When the devise is general to a class, without designating any time for the ascertainment of the members thereof, the testator is presumed to know that after-born children answering the description, will be admitted to the class; this is his legal intention. In case of the death of a member of the class during the lifetime of the testator, his legal intention was, prior to the act of 1897, presumed to be that the issue of the person so dying should not participate in the distribution. When the devise is to the children of brothers and sisters as a class, the act of 1897 goes only to the legal effect of the actual intention of the testator as declared by the words of his will; it is now presumed to be the legal intention of the testator that when a person who is actually within the class dies leaving issue such issue shall take by substitution. The language of Mr. Justice Rodgers, in dealing with a question of this nature, in Martindale v. Warner, 15 Pa. 471, is pertinent:

" 'The question is not as to the corpus of the bequest or its extent, but the difficulty is as to the legatee who is to take. . . . Though a will, it is true, does not take effect till after the testator's death, yet it is inchoate, though not consummate, from the execution of it and for many purposes in law, of which this is one, it relates to the time of the making of it.' In Taylor v. Mitchell, 57 Pa. 209, Mr. Justice Sharswood said: 'It is true, that every will is

ambulatory until the death of the testator, and the disposition made by it does not actually take effect until then. General words apply to the property of which the testator dies possessed, and he retains the power of revocation as long as he lives. The act of bequeathing or devising, however, takes effect when the will is executed, though to go into effect at a future time.' A will speaks for some purposes from the period of its execution: Quin's Estate, 144 Pa. 445. . . . The provisions of the act of 1897 are just and conformable to the probable intention of the testator in every instance. The argument in support of the legislation was that, the fact that the child or relative is not mentioned by name should not defeat the real purpose of the testator, where the language, applied to the facts as they were at the execution of the will, designated a child or relative as an object of the testator's bounty with as much certainty as if it were mentioned by name. The act was not intended to set up a new rule for the construction of wills and include as primary legatees, persons who did not come within the meaning of the language employed by a testator, its purpose was to provide for the substitution of the issue upon the death of one who was at the date of the will or subsequently came within the class to which the devise or bequest was made . . . and there was, therefore, nothing which the appellant was entitled to take by substitution: Gray v. Garman, 2 Hare, 268; Martha May's Appeal, 41 Pa. 512; Long v. Labor, 8 Pa. 229. This seems to be in harmony with the construction placed by the Supreme Court upon the Act of April 8, 1833, P. L. 250, relating to legacies to lineal descendents. In Bradley's Estate, 166 Pa. 300, it was held that where a member of the class dies after the date of the will leaving issue, such issue took by substitution; while in Hunt's Estate, 133 Pa. 260, where the devise was of personal estate 'to all my children,' it was held that the issue of a son who died prior to the execution of the will must be excluded."

The above case is directly in point and therefore Mabel K. Carlton and Amos C. Nielsen being children respectively of a nephew and a niece of the decedent who died prior to the date of the will are not in our opinion entitled to distributive shares in the said estate.

The claims of Lenora Weber and William Weber do not come within the provisions of either of the said Acts of 1897 or 1917. They can only be entitled to distribution in the said estate by virtue of an act of assembly. The Act of 1917 provides for participation under certain circumstances by a brother or sister or children of brothers or sisters of the testator. Lenora Weber and William Weber are not children of testator's brothers or sisters but are children of Marian Liebau Weber, a niece of testator's wife. They are grandnieces and nephews of testator only by virtue of marriage, are not included within the provisions of the Wills Act of 1917 and are not therefore in our opinion for this reason entitled to participate in the distribution of his estate, and also for the reasons set forth in Harrison's Estate, supra, their parents having died prior to the execution of the will. The case of Thompson's Estate, 10 D. & C., 69, cited and relied upon by the attorney in behalf of the said claimants is not in point here, since in that case claimant was a blood relative of the testator.

Minter's Appeal, 40 Pa. 111, and Wunder's Estate, 41 Montg. 277, are distinguishable from the case at bar. In the former the bequest was to a sister, not as a member of a class but specifically named, and for that reason the sister's children were permitted to take the legacy bequeathed to their mother although she had died prior to the date of the execution of the will. In the latter case the bequest was to a brother, not as a member of a class but specifically named, and for this reason his children were allowed to take the legacy bequeathed to their father although he was dead at the date of the execution of the will. This distinction is clearly pointed out in the court's

574

opinion in Harrison's Estate quoted above. See also Stoddard's Estate, 21 D. & C. 369.

Distribution is directed to be made in accordance herewith.                    From Otto Herbst, Erie.